UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | Case No. 15-30325 |
| Elias and Consuelo Esquivel, | ) | Hon. Donald R. Cassling |
| | ) | (Kane County) |
| | ) | Hearing Date:  December 11, 2015 |
| Debtors. | ) | Time: 10:30 a.m. |

## Notice of Motion

**TO:**   *See Attached Service List*

PLEASE TAKE NOTICE that on Friday, December 11, 2015 at 10:30 a.m. or as soon thereafter as counsel may be heard, we shall appear before the Honorable Donald R. Cassling, or any bankruptcy judge sitting in his stead in Courtroom 240 of the Kane County Courthouse, 100 South 3rd Street, Geneva, Illinois, and then and there present the **Trustee's Motion 1) to Sell Real Property Free and Clear of Liens under Section 363(f) – 619 Westwind Dr., Carpentersville, IL, 2) to pay Marina Treviso & Coldwell Banker a Real Estate Broker's Commission, 3) to Employ and Pay Wayne J. Skelton as Special Counsel, 4) to Pay Customary Costs of Sale Including Delinquent RE Taxes, and 5) to Pay Debtors' Homestead Exemptions and Shorten Notice** a true and correct copy of which is attached hereto and hereby served upon you.

_____/s/ Elizabeth C. Berg, trustee_____

## Certificate of Service

I, Elizabeth C. Berg, hereby certify that on November 25, 2015, I caused a true and correct copy of the foregoing Notice of Motion, the document identified therein and a proposed order to be served on the persons on the attached service list at their respective addresses via electronic delivery through CM/ECF or first class mail, postage prepaid as indicated on the service list.

_____/s/ Elizabeth C. Berg, trustee_____

Elizabeth C. Berg
Julia D. Loper
Baldi Berg, Ltd.
20 N. Clark Street    Suite 200
Chicago, IL  60602
(312) 726-8150

*Service List*

**Elias & Consuelo Esquivel, debtors**
**Case No. 15-30325**

**Served Electronically Via CM/ECF**

Office of the U.S. Trustee
USTPRegion11.ES.ECF@usdoj.gov

Stephen J. Costello
Costello & Costello
*Debtors' Attorney*
steve@costellolaw.com

**Served by 1st Class United States Mail**

Elias & Consuelo Esquivel
PO Box 91
Dumont, Iowa 50625

Lily Investments LLC
c/o Joseph Ryan
1896 Sheridan Rd., Suite 280
Highland Park, IL 60035

Kane County Clerk
719 S. Batavia Ave., Bldg. B
Geneva, IL 60134

First Franklin Financial Corp.
21501 North First Street
San Jose  CA  95131

Wayne J. Skelton
1553 Chickamauga Lane
Long Grove, IL 60047

Marina Treviso
Coldwell Banker
623 S. Naperville Road
Wheaton  IL  60187

Jonathan Vold
900 Northwest Hwy.
Mt Prospect, IL 60056

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | Case No. 15-30325 |
| Elias and Consuelo Esquivel, | ) | Hon. Donald R. Cassling |
| | ) | (Kane County) |
| | ) | Hearing Date:  December 11, 2015 |
| Debtors. | ) | Time: 10:30 a.m. |

**Trustee's Motion 1) to Sell Real Property Free and Clear of Liens under Section 363(f) –
619 Westwind Dr., Carpentersville, IL, 2) to pay Marina Treviso & Coldwell Banker a Real
Estate Broker's Commission, 3) to Employ and Pay Wayne J. Skelton as Special Counsel
4) to Pay Customary Costs of Sale Including Delinquent RE Taxes, and
5) Pay Debtors' Homestead Exemptions and Shorten Notice**

Elizabeth C. Berg, not personally but solely as trustee ("Trustee") of the estate ("Estate")

of Elias and Consuelo Esquivel, debtors ("Debtors"), pursuant to 11 U.S.C. §§ 11 U.S.C. §§

327, 330, 363(b) and §503(b), respectfully requests this Court to enter an order authorizing her

1) to sell the real property identified as 619 Westwind Dr., Carpentersville, IL "as is, where is"

and free and clear of all liens, claims and interests, 2) to pay a real estate broker's commission,

3) to employ and pay special real estate counsel, 4) to pay customary closing costs including

delinquent taxes and, 5) to pay the Debtors' homestead exemption.  In support thereof, Trustee

states as follows:

<u>**Background**</u>

1.      Debtors commenced this case by filing a voluntary petition for relief under

chapter 7 of the title 11 of the United States Code ("Code") on September 3, 2015.

2.      Elizabeth C. Berg is the duly appointed, qualified and acting chapter 7 trustee in

this case.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.      The sole asset of value belonging to this Estate is the Debtors' primary

residence.  The residence is comprised of a parcel of real estate improved by a single family

home located at 619 Westwind Dr., Carpentersville, IL ("Property").  Upon Trustee's information

and belief, Debtors are the sole owners of the Property.

5.     Upon Trustee's information and belief, there are no outstanding valid mortgages

on the Property.  However, in 2004 a mortgage lien was recorded against the Property in favor

of First Franklin Financial Corp. ("First Franklin"), a subsidiary of National City Bank of Indiana.

Trustee is informed and believes that the First Franklin mortgage was paid in full on or about

March 23, 2005 upon the Debtors' refinance of the Property, however, a release of First

Franklin's mortgage was not filed with the Kane County Recorder of Deeds.  Trustee disputes

the extent, validity and priority of the claim of First Franklin and believes that there are no funds

due or owing to claimant under the note secured by the First Franklin mortgage filed against the

Property.

6.     The Property is encumbered by a lien in favor of Lily Investments LLC ("Lily")

who purchased delinquent real estate taxes for the tax years 2011, 2012, 2013 and 2014.

According to the Kane County Clerk's office, the amount to redeem all delinquent taxes paid by

Lily in connection with the 2011 tax sale is approximately $14,000.00.  Trustee intends to

redeem all delinquent real estate taxes at closing from the proceeds of the sale.

7.     Pursuant to this Court's order dated September 25, 2015, Trustee was

authorized to retain Marina Treviso and the brokerage firm of Coldwell Banker (collectively

"Coldwell Banker") as real estate broker to the Estate in order to list the Property for sale.

### Offer to Purchase the Property

8.     Trustee received an offer to purchase the Property from Pranav Patel

("Purchaser") for a purchase price of $75,000.00 ("Purchase Price").  Purchaser and Trustee

have entered into a Real Estate Sales Contract, (the "Sales Contract"), a copy of which is

attached hereto as **Exhibit A**.  The essential terms of the Sales Contract are:

2

a)    Purchaser will pay the Purchase Price by the payment of an initial earnest money deposit of $3,000.00 with the balance to be paid in cash at closing.  There are no mortgage contingencies in the Sales Contract;

b)    Purchaser will purchase the Property "as is – where is", with no warranties or representations regarding the condition of the Property;

c)    The Property will be transferred to Purchaser pursuant to a duly executed trustee quitclaim deed, and other appropriate documents of conveyance, free and clear of liens, claims and interests, with all such liens, claims and interest, including the lien of First Franklin, if any, to attach to the proceeds of sale in accordance with §363(f) of the Code;

d)    The Sales Contract is subject to and conditioned on the entry of an order of this Court approving the Sales Contract and authorizing the proposed sale; and

e)     Closing will take place on or before December 30, 2015.

9.    Trustee believes that the proposed sale to Purchaser upon the terms set forth in the Sales Contract is in the best interests of the Estate and its creditors and represents the highest and best price for the Property.

10.    Trustee has reviewed comparables for the Property and has consulted with Coldwell Banker regarding the condition of the residence. Based on her review, Trustee believes that Purchaser's offer is well within the range of the Property's current market value. The Trustee initially listed the Property for sale at the price of $7,500.00 and has procured an offer for the full list price.

11.    If approved, the Trustee anticipates that the Estate will net approximately $20,000 from the sale of the Property after the satisfaction of the delinquent taxes, payment of claims for a real estate broker's commission, Debtors' exemptions and payment of the customary costs of sale.

## Sale Free and Clear of Lien Claims

12.    Trustee requests that the order approving the sale of the Property provide that

3

the Property will be sold free and clear of liens, claims and interests, with all liens, claims or interests to attach to the proceeds of sale in accordance with §363(b), 363(e) and 363 (f) of the Code.

13.     The Purchase Price exceeds the amount of the 2012 delinquent real estate taxes purchased by Lily which Trustee intends to pay at closing.  Accordingly, Trustee may sell the Property free and clear of the delinquent tax liens pursuant to the provisions of §363(f)(3).

14.     As set forth above, First Franklin has an unreleased mortgage against the Property. Based on the testimony of Debtors, Trustee believes the lien has been satisfied and the Trustee may sell the Property free and clear of the judgment liens and delinquent taxes pursuant to the provisions of §363(b) and (e).

### Request to Pay Broker's Commission

15.     Pursuant to this Court's order dated September 25, 2015, Trustee obtained authority to retain Marina Treviso and Coldwell Banker as real estate brokers on behalf of the Estate, and to enter into an exclusive sales listing agreement for the sale of the Property.

16.     Pursuant to the terms of the listing agreement and rider between Coldwell Banker and Trustee dated September 28, 2015 ("Listing Agreement"), Coldwell Banker is entitled to receive a broker's commission in an amount equal to 5% of the sale price for the Property plus $495 as an administrative fee, subject to approval by this Court upon the closing of this transaction.  The Listing Agreement also provided that no commission is earned by or payable to Coldwell Banker unless and until both (i) the Property is sold to a purchaser introduced to the Property during the term of the Listing Agreement, and (ii) the agreed purchase price is paid to the Estate in good funds or otherwise realized by the Estate.

17.     Coldwell Banker has expended time and has incurred costs in connection with its representation of the Estate in this transaction.  Marina Treviso has personally inspected the Property and prepared a comparative market value analysis for the Property, shown the Property to prospective purchasers, listed the Property in applicable multiple listing services and

otherwise acted as the agent of the Estate in connection with the proposed sale.

18.     Trustee requests that this Court approve a real estate broker's commission of $3,750.00 to be paid to Coldwell Banker as final compensation for its services to the Estate, representing 5% of the Purchase Price for the Property, plus $445 for administrative expenses. The proposed commission and expenses to Coldwell Banker are the amounts payable pursuant to the Listing Agreement and are customary in the real estate industry for transactions of this type.   The commission and allowed expenses to be paid represent the full and final compensation and expense reimbursement which will be paid to Coldwell Banker in connection with its services as a real estate broker for the Estate.

**Request to Employ Special Counsel and Pay Attorney's Fees for Closing Services**

19.     Trustee seeks court authority to employ attorney Wayne J. Skelton ("Skelton") to represent her in the preparation of closing documents, and to represent the Trustee at the closing of the proposed sale of the Property (collectively, the "Closing Services").  Trustee seeks to retain Skelton to perform the Closing Services at the fixed fee rate of $1,000.00 ("Fixed Fee"), subject to approval of this Court, payable upon the closing of the sale of the Property.

20.     Trustee is informed and believes that Skelton is experienced in both bankruptcy and real estate closings of this type and that the fees of Skelton are customary for transactions of this type.  Skelton's employment on the terms and conditions provided for herein is in the best interests of the Estate.

21.     In addition to his services as special counsel to the Trustee, Skelton is a title agent for First American Title ("First American") and will receive a fee directly from First American for his title services.  Skelton's affiliation with and compensation from First American does not represent an adverse interest to the Estate.  Based upon the Affidavit of Skelton, which is attached hereto as **Exhibit B**, Trustee believes that Skelton is a disinterested person within the meaning of 11 U.S.C. § 101(14).

22.     Trustee requests the authority from this Court to pay the Fixed Fee, without further order of this Court, at closing from the sale proceeds.  The Fixed Fee represents the full and final fee which will be paid to Skelton in connection with the performance of the Closing Services on behalf of the Trustee.

### Payment of Closing Costs

23.     Trustee will incur customary closing costs, including costs for recording fees, title charges, transfer taxes and title insurance charges in connection with the closing of the sale of the Property for which the Estate is obligated pursuant to the Sales Contract.  In addition, any real estate taxes which remain unpaid and the prorated portion of real estate taxes which have been assessed but are not yet due and payable must be paid or credited to Purchaser at the closing of the sale of the Property.  All such charges are either administrative expenses of this Estate or are amounts secured by liens against the Property which must be paid at closing in order to deliver good title to Purchaser and comply with the Sales Contract.  Accordingly, Trustee requests that she be authorized to pay or permit a credit against the Purchase Price for all customary closing costs and real estate taxes at the closing of the sale of the Property from the proceeds of sale.

### Payment of Debtors' Homestead Exemption

24.     At the time of filing, Debtors resided at the Property as their residence.  Trustee is informed that Debtors have vacated the Property because of the pending sale.

25.     Debtors have each claimed and are entitled to a $15,000.00 homestead exemption in the Property.  Trustee requests authority to pay each of the Debtors their allowed homestead exemption from the gross proceeds of the sale at closing.

### Notice to Creditors – Request for Shortened Notice

26.     Trustee has provided 17 days' notice of the hearing on this Motion to the Debtors, Debtors' attorney, Purchaser, Lily, First Franklin, Kane County Clerk, Coldwell Banker, all creditors, the United States Trustee and other parties in interest in the form attached hereto

6

as Exhibit C, in accordance with Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

27.    Purchasers have stipulated that the closing must take place by December 30, 2015.  In order to complete all title clearance and comply with the Purchasers request, Trustee desires to obtain an order approving the sale by December 11, 2015.  The Property has been listed for sale in the MLS service and advertised on the internet.  As a result, the Property has been fully exposed to the market.  Trustee therefore requests that the Court find that the shortened notice provided of the Motion be deemed sufficient for purposes of Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure and that the Court shorten the notice period to seventeen days for cause shown pursuant to Rule 9006(c).

28.    In order to close on the sale of the Property as soon as possible, Trustee also seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).

**WHEREFORE**, Elizabeth C. Berg, as trustee of the Estate of Elias and Consuelo Esquivel, debtors, requests this Court to enter an order:

a)    Authorizing Trustee to sell the real property commonly known as 619 Westwind Dr., Carpentersville, IL to Pranav Patel for $75,000.00, "as is, where is" and free and clear of all liens, claims and interests on the terms set forth in the Sales Contract;

b)    Authorizing Trustee to execute any and all documents which are necessary or proper to close the sale of the Property and transfer title to Pranav Patel;

c)    Authorizing Trustee to pay or provide a credit at closing for the customary closing costs, including delinquent real taxes, real estate taxes due or assessed but not yet payable, recording fees, title charges, transfer taxes, title insurance charges and any other charges the Estate is obligated to pay pursuant to the Sales Contract in connection with the closing of the sale of the Property;

7

d) Authorizing Trustee to pay Coldwell Banker a commission in the amount of $3,750.00 at closing, plus administrative fees totaling $495.00, in full satisfaction of its commission due as real estate broker to the Estate in connection with this property;

e) Authorizing Trustee to employ Wayne J. Skelton as special counsel to represent her in the preparation of closing documents and in the sale of the Property;

f) Allowing and authorizing Trustee to pay Wayne J. Skelton his Fixed Fee of $1,000.00 from the proceeds of sale as final compensation for his services to the Trustee at the closing of the sale of the Property;

g) Authorizing Trustee to pay to Debtors at closing from the gross proceeds of sale their allowed homestead exemption in the amount of $15,000.00 each;

h) Determining that the notice provided of the proposed sale is sufficient for purposes of Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure and that any further notice is waived for cause shown pursuant to Rule 9006(c);

i) Waiving the fourteen day stay under Rule 6004(h); and

j) For such other and further relief as this Court deems proper.

Dated: November 25, 2015                    Respectfully submitted,

                                             Elizabeth C. Berg, as trustee of the Estate
                                             of Elias and Consuelo Esquivel, debtors

                                             By: ___/s/ Elizabeth C. Berg, trustee_____

Elizabeth C. Berg
Julia D. Loper
Baldi Berg, Ltd.
20 N. Clark Street    Suite 200
Chicago, IL  60602
(312) 726-8150

DocuSign Envelope ID: 6BFBBD50-70B7-45CC-A77B-058506736508
DocuSign Envelope ID: 5D419A00-DA85-4B8E-9BB2-8F0E484302A7



**MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 6.1**



1  **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties".

$P.P\ 9\&$

2  Buyer Name(s) *[please print]* Pranav Patel
3  Seller Name(s) *[please print]* ~~BOR~~ Elizabeth C. Berg, as bankruptcy trustee for The Estate of
4  **If Dual Agency Applies, Complete Optional Paragraph 31.** Consuelo & Elias Esquivel, debtors

5  **2. THE REAL ESTATE:** Real Estate shall be defined as the property, all improvements, the fixtures and Personal
6  Property included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the Real Estate
7  with approximate lot size or acreage of _____ commonly known as:
8  619 Westwind Dr , Carpentersville, Illinois 60110

| 9 Address | City | State | Zip |
|---|---|---|---|
| 10 Kane | | 0315103003 | |
| 11 County | Unit # (If applicable) | Permanent Index Number(s) of Real Estate | |

12  **If Condo/Coop/Townhome Parking is Included:** # of spaces(s)ᵖˢ _____; identified as Space(s) # _____;
13  *[check type]* ☐ deeded space, PIN: _____ ☐ limited common element ☐ assigned space.

14  **3. PURCHASE PRICE:** The Purchase Price shall be $ ~~71000~~ ⚹ 75,000.⁰⁰ ᶜᵉᴮ . After the payment of
15  Earnest Money as provided below, the balance of the Purchase Price, as adjusted by prorations, shall be paid at
16  Closing in "Good Funds" as defined by law.

17  **4. EARNEST MONEY:** Earnest Money shall be held in trust for the mutual benefit of the Parties by *[check one]*:
18  ☐ Seller's Brokerage; ☐ Buyer's Brokerage; ☑ As otherwise agreed by the Parties, as "Escrowee".
19  Initial Earnest Money of $ 3000 _____ shall be tendered to Escrowee on or before 3 ___ day(s) after Date
20  of Acceptance. Additional Earnest Money of $ _____ shall be tendered by _____, 20 ___.

21  **5. FIXTURES AND PERSONAL PROPERTY AT NO ADDITIONAL COST:** All of the fixtures and included Personal
22  Property are owned by Seller and to Seller's knowledge are in operating condition on the Date of Acceptance,
23  unless otherwise stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing,
24  and well systems together with the following items of Personal Property at no additional cost by Bill of Sale at
25  Closing *[Check or enumerate applicable items]*:

| | | | |
|---|---|---|---|
| 26 ☑ Refrigerator | ☑ Central Air Conditioning | ☐ Central Humidifier | ☐ Light Fixtures, as they exist |
| 27 ☑ Oven/Range/Stove | ☐ Window Air Conditioner(s) | ☐ Water Softener (owned) | ☐ Built-in or attached shelving |
| 28 ☐ Microwave | ☐ Ceiling Fan(s) | ☐ Sump Pump(s) | ☐ All Window Treatments & Hardware |
| 29 ☐ Dishwasher | ☐ Intercom System | ☐ Electronic or Media Air Filter(s) | ☐ Existing Storms and Screens |
| 30 ☐ Garbage Disposal | ☐ Backup Generator System | ☐ Central Vac & Equipment | ☐ Fireplace Screens/Doors/Grates |
| 31 ☐ Trash Compactor | ☐ Satellite Dish | ☐ Security System(s) (owned) | ☐ Fireplace Gas Log(s) |
| 32 ☑ Washer | ☐ Outdoor Shed | ☐ Garage Door Opener(s) | ☐ Invisible Fence System, Collar & Box |
| 33 ☑ Dryer | ☐ Planted Vegetation | with all Transmitters | ☑ Smoke Detectors |
| 34 ☐ Attached Gas Grill | ☐ Outdoor Play Set(s) | ☑ All Tacked Down Carpeting | ☑ Carbon Monoxide Detectors |

35  **Other Items Included at No Additional Cost:** As-Is

36
37  **Items Not Included:** As-Is                                                    P. Plug
38                        , will convey

39  Seller ~~warrants~~ to Buyer ~~that~~ all fixtures, systems and Personal Property included in this Contract ~~shall be in~~
40  ~~operating condition at~~ Possession ~~except~~  in  As Is, Where Is  condition.
41  A system or item shall be deemed to be in operating condition if it performs the function for which it is
42  intended, regardless of age, and does not constitute a threat to health or safety.
43  **If Home Warranty will be provided, complete Optional Paragraph 34.**

*Buyer Initial* P   *Buyer Initial* _____        *Seller Initial* 𝓤𝓤𝒷𝓰 *Seller Initial* _____
*Address:* ~~619 Westwind Dr , Carpentersville, Illinois 60110~~
Page 1 of 13                                                                                       *v6.1*

EXHIBIT A

DocuSign Envelope ID: 6BFBBD50-70B7-45CC-A77B-05850…
DocuSign Envelope ID: 5D419A00-DA85-4B6E-9BB2-8F0E484302A7

*P Pub*

44 **6. CLOSING:** Closing shall be on ~~12/23~~ 12/30 , 20 15   or at such time as mutually agreed by the
45 Parties in writing. Closing shall take place at the escrow office of the title company (or its issuing agent) that will
46 issue the Owner's Policy of Title Insurance, situated nearest the Real Estate or as shall be agreed mutually by the Parties.

47 **7. POSSESSION:** Unless otherwise provided in Paragraph 40, Seller shall deliver possession to Buyer at Closing.
48 Possession shall be deemed to have been delivered when Seller has vacated the Real Estate and delivered keys
49 to the Real Estate to Buyer or to the office of the Seller's Brokerage.

50 **8. MORTGAGE CONTINGENCY:** If this transaction is NOT CONTINGENT ON FINANCING, Optional Paragraph 36 a) OR
51 Paragraph 36 b) MUST BE USED. If any portion of Paragraph 36 is used, the provisions of this Paragraph 8 are NOT APPLICABLE.
52 This Contract is contingent upon Buyer obtaining a *[check one]* ☐ fixed; ☐ adjustable; *[check one]* ☐ conventional;
53 ☐ FHA/VA (if FHA/VA is chosen, complete Paragraph 37); ☐ other _____ loan for ____ %
54 of the Purchase Price, plus private mortgage insurance (PMI), if required, with an interest rate (initial rate if an
55 adjustable rate mortgage used) not to exceed _____% per annum, amortized over not less than _____ years.
56 Buyer shall pay loan origination fee and/or discount points not to exceed _____ % of the loan amount.  Buyer
57 shall pay usual and customary processing fees and closing costs charged by lender. (Complete Paragraph 35 if
58 closing cost credits apply).

59 Buyer shall make written loan application within five (5) Business Days after the Date of Acceptance; **failure to**
60 **do so shall constitute an act of Default under this Contract.** *[Complete both a) and b)]*:
61 a) Not later than _____, 20 ____, (if no date is inserted, the date shall be twenty-one (21) days after
62    the Date of Acceptance) Buyer shall provide written evidence from Buyer's licensed lending institution
63    confirming that Buyer has provided to such lending institution an "Intent to Proceed" as that term is defined
64    in the rules of the Consumer Financial Protection Bureau and has paid all lender application and appraisal
65    fees. If Buyer is unable to provide such written evidence, Seller shall have the option of declaring this
66    Contract terminated by giving Notice to the other Party not later than two (2) Business Days after the date
67    specified herein or any extension date agreed to by the Parties in writing.
68 b) Not later than _____, 20 ____, (if no date is inserted, the date shall be sixty (60) days after the
69    Date of Acceptance) Buyer shall provide written evidence from Buyer's licensed lending institution
70    confirming that Buyer has received a written mortgage commitment for the loan referred to above. If Buyer
71    is unable to provide such written evidence either Buyer or Seller shall have the option of declaring this
72    Contract terminated by giving Notice to the other Party not later than two (2) Business Days after the date
73    specified herein or any extension date agreed to by the Parties in writing.

74 **A Party causing delay in the loan approval process shall not have the right to terminate under either of the**
75 **preceding paragraphs. In the event neither Party elects to declare this Contract terminated as of the latter of**
76 **the dates specified above (as may be amended from time to time), then this Contract shall continue in full**
77 **force and effect without any loan contingencies.**

78 Unless otherwise provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or
79 closing of Buyer's existing real estate. Buyer shall be deemed to have satisfied the financing conditions of this
80 paragraph if Buyer obtains a loan commitment in accordance with the terms of this paragraph even though the
81 loan is conditioned on the sale and/or closing of Buyer's existing real estate.

82 **9. STATUTORY DISCLOSURES:** If applicable, prior to signing this Contract, Buyer:
83 *[check one]* ☑ has ☐ has not received a completed Illinois Residential Real Property Disclosure;
84 *[check one]* ☑ has ☐ has not received the EPA Pamphlet, "Protect Your Family From Lead In Your Home";
85 *[check one]* ☑ has ☐ has not received a Lead-Based Paint Disclosure;
86 *[check one]* ☑ has ☐ has not received the IEMA, "Radon Testing Guidelines for Real Estate Transactions";

Buyer Initial _P_ Buyer Initial ____    Seller Initial _AUO_ Seller Initial ____
Address: 619 ~~Westwind Dr~~, Carpentersville, Illinois 60110
Page 2 of 13                                                        v6.1

EXHIBIT A

DocuSign Envelope ID: 6BFBBD50-70B7-45CC-A77B-05850D06698A
DocuSign Envelope ID: 5D419A00-DA85-4B8E-9BB2-8F0E484302A7

87    *[check one]* ☑ has ☐ has not received the Disclosure of Information on Radon Hazards.

88    **10. PRORATIONS:** Proratable items shall include without limitation, rents and deposits (if any) from tenants;
89    Special Service Area or Special Assessment Area tax for the year of Closing only; utilities, water and sewer; and
90    Homeowner or Condominium Association fees (and Master/Umbrella Association fees, if applicable).
91    Accumulated reserves of a Homeowner/Condominium Association(s) are not a proratable item. Seller
92    represents that as of the Date of Acceptance Homeowner/Condominium Association(s) fees are $ _____
93    per _____ (and, if applicable Master/Umbrella Association fees are $ 0 _____ per _____ ).
94    Seller agrees to pay prior to or at Closing any special assessments (by any association or governmental entity)
95    confirmed prior to the Date of Acceptance. Special Assessment Area or Special Service Area installments due
96    after the year of Closing shall not be proratable items and shall be paid by Buyer. The general Real Estate taxes
97    shall be prorated as of the date of Closing based on 100 % of the most recent ascertainable full year tax bill. All
98    prorations shall be final as of Closing, except as provided in Paragraph 22. If the amount of the most recent
99    ascertainable full year tax bill reflects a homeowner, senior citizen or other exemption, a senior freeze or senior
100   deferral, then Seller has submitted or will submit in a timely manner all necessary documentation to the
101   appropriate governmental entity, before or after Closing, to preserve said exemption(s). The requirements of
102   this Paragraph shall survive the Closing.

103   **11. ATTORNEY REVIEW:** Within five (5) Business Days after Date of Acceptance, the attorneys for the respective
104   Parties, by Notice, may:
105   a) Approve this Contract; or
106   b) Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or
107   c) Propose modifications except for the Purchase Price. If within ten (10) Business Days after the Date of
108      Acceptance written agreement is not reached by the Parties with respect to resolution of the proposed
109      modifications, then either Party may terminate this Contract by serving Notice, whereupon this Contract
110      shall be null and void; or
111   d) Propose suggested changes to this Contract. If such suggestions are not agreed upon, neither Party may
112      declare this Contract null and void and this Contract shall remain in full force and effect.
113   Unless otherwise specified, all Notices shall be deemed made pursuant to Paragraph 11 c). If Notice is not
114   served within the time specified herein, the provisions of this paragraph shall be deemed waived by the
115   Parties and this Contract shall remain in full force and effect.

116   **12. PROFESSIONAL INSPECTIONS AND INSPECTION NOTICES:** Buyer may conduct at Buyer's expense (unless
117   otherwise provided by governmental regulations) any or all of the following inspections of the Real Estate by
118   one or more licensed or certified inspection services: home, radon, environmental, lead-based paint, lead-based
119   paint hazards or wood-destroying insect infestation.
120   a) Buyer agrees that minor repairs and routine maintenance items of the Real Estate do not constitute defects
121      and are not a part of this contingency. **The fact that a functioning major component may be at the end of**
122      **its useful life shall not render such component defective for purposes of this paragraph.** Buyer shall
123      indemnify Seller and hold Seller harmless from and against any loss or damage caused by the acts of
124      negligence of Buyer or any person performing any inspection. The home inspection shall cover only the
125      major components of the Real Estate, including but not limited to central heating system(s), central cooling
126      system(s), plumbing and well system, electrical system, roof, walls, windows, doors, ceilings, floors,
127      appliances and foundation. A major component shall be deemed to be in operating condition if it performs
128      the function for which it is intended, regardless of age, and does not constitute a threat to health or safety. If
129      radon mitigation is performed, Seller shall pay for any retest.

Buyer Initial _P._ Buyer Initial _____                Seller Initial _WW_ Seller Initial _____
Address: 619 Westwind Dr., Carpentersville, Illinois 60110                              v6.1
Page 3 of 13

EXHIBIT A

DocuSign Envelope ID: 6BFBBD50-70B7-4SCC-A77B-0585DD 76E6DM
DocuSign Envelope ID: 5D419A00-DA85-4B8E-9BB2-8F0E484302A7

130    b)   Buyer shall serve Notice upon Seller or Seller's attorney of any defects disclosed by any inspection for which
131       Buyer requests resolution by Seller, together with a copy of the pertinent pages of the inspection reports
132       within five (5) Business Days (ten (10) calendar days for a lead-based paint or lead-based paint hazard
133       inspection) after the Date of Acceptance. If within ten (10) Business Days after the Date of Acceptance
134       written agreement is not reached by the Parties with respect to resolution of all inspection issues, then either
135       Party may terminate this Contract by serving Notice to the other Party, whereupon this Contract shall be
136       null and void.

137    c)   Notwithstanding anything to the contrary set forth above in this paragraph, in the event the inspection
138       reveals that the condition of the Real Estate is unacceptable to Buyer and Buyer serves Notice to Seller
139       within five (5) Business Days after the Date of Acceptance, this Contract shall be null and void. Said Notice
140       shall not include any portion of the inspection reports unless requested by Seller.

141    d)   Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a
142       waiver of Buyer's rights to terminate this Contract under this Paragraph 12 and this Contract shall remain
143       in full force and effect.

144    **13. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer obtaining evidence of insurability for an
145    Insurance Service Organization HO-3 or equivalent policy at standard premium rates within ten (10) Business
146    Days after the Date of Acceptance. If Buyer is unable to obtain evidence of insurability and serves Notice
147    with proof of same to Seller within time specified, this Contract shall be null and void. If Notice is not
148    served within the time specified, Buyer shall be deemed to have waived this contingency and this Contract
149    shall remain in full force and effect.

150    **14. FLOOD INSURANCE:** Buyer shall have the option to declare this Contract null and void if the Real Estate is
151    located in a special flood hazard area. If Notice of the option to declare contract null and void is not given to
152    Seller within ten (10) Business Days after the Date of Acceptance or by the time specified in Paragraph 8 b),
153    whichever is later, Buyer shall be deemed to have waived such option and this Contract shall remain in full
154    force and effect. Nothing herein shall be deemed to affect any rights afforded by the Residential Real Property
155    Disclosure Act.

156    **15. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS:** (If applicable) The Parties agree that the terms
157    contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any
158    conflicting terms.

159    a)   Title when conveyed shall be good and merchantable, subject to terms, provisions, covenants and conditions
160       of the Declaration of Condominium/Covenants, Conditions and Restrictions ("Declaration/CCRs") and all
161       amendments; public and utility easements including any easements established by or implied from the
162       Declaration/CCRs or amendments thereto; party wall rights and agreements; limitations and conditions
163       imposed by the Condominium Property Act; installments due after the date of Closing of general
164       assessments established pursuant to the Declaration/CCRs.

165    b)   Seller shall be responsible for payment of all regular assessments due and levied prior to Closing and for all
166       special assessments confirmed prior to the Date of Acceptance.

167    c)   Seller shall notify Buyer of any proposed special assessment or increase in any regular assessment between
168       the Date of Acceptance and Closing. The Parties shall have three (3) Business Days to reach agreement
169       relative to payment thereof. Absent such agreement either Party may declare the Contract null and void.

170    d)   Seller shall, within five (5) Business Days from the Date of Acceptance, apply for those items of disclosure
171       upon sale as described in the Illinois Condominium Property Act, and provide same in a timely manner, but
172       no later than the time period provided for by law. This Contract is subject to the condition that Seller be able

Buyer Initial [P]   Buyer Initial _____
Address: 619 Westwind Dr, Carpentersville, Illinois 60110

Seller Initial [initials]   Seller Initial _____

Page 4 of 13             v6.1

EXHIBIT A

DocuSign Envelope ID: 6BFBBD50-70B7-45CC-A77B-0585D1676508

DocuSign Envelope ID: 5D419A00-DA85-4B8E-9BB2-8F0E484302A7

173  to procure and provide to Buyer a release or waiver of any right of first refusal or other pre-emptive rights to
174  purchase created by the Declaration/CCRs. In the event the Condominium Association requires the personal
175  appearance of Buyer or additional documentation, Buyer agrees to comply with same.
176  e) In the event the documents and information provided by Seller to Buyer disclose that the existing
177     improvements are in violation of existing rules, regulations or other restrictions or that the terms and
178     conditions contained within the documents would unreasonably restrict Buyer's use of the premises or
179     would result in financial obligations unacceptable to Buyer in connection with owning the Real Estate, then
180     Buyer may declare this Contract null and void by giving Seller Notice within five (5) Business Days after the
181     receipt of the documents and information required by this Paragraph, listing those deficiencies which are
182     unacceptable to Buyer. If Notice is not served within the time specified, Buyer shall be deemed to have
183     waived this contingency, and this Contract shall remain in full force and effect. *Bankruptcy Court Order*
                                                                                          *and a*
184  f) Seller shall not be obligated to provide a condominium survey. *Trustee's Quitclaim* *UB*
185  g) Seller shall provide a certificate of insurance showing Buyer and Buyer's mortgagee, if any, as an insured.

186  **16. THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's Designated grantee good and
187  merchantable title to the Real Estate by recordable ~~Warranty~~ Deed, with release of homestead rights, (or the
188  appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller
189  (unless otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject
190  only to: covenants, conditions and restrictions of record and building lines and easements, if any, provided they
191  do not interfere with the current use and enjoyment of the Real Estate; and general real estate taxes not due and
192  payable at the time of Closing.

193  **17. MUNICIPAL ORDINANCE, TRANSFER TAX, AND GOVERNMENTAL COMPLIANCE:**
194  a) The Parties are cautioned that the Real Estate may be situated in a municipality that has adopted a pre-
195     closing inspection requirement, municipal Transfer Tax or other similar ordinances. Transfer taxes required
196     by municipal ordinance shall be paid by the Party designated in such ordinance.
197  b) The Parties agree to comply with the reporting requirements of the applicable sections of the Internal
198     Revenue Code and the Real Estate Settlement Procedures Act of 1974, as amended.

199  **18. TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
200  customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
201  commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by
202  a title company licensed to operate in the State of Illinois, issued on or subsequent to the Date of Acceptance,
203  subject only to items listed in Paragraph 16. The requirement to provide extended coverage shall not apply if the
204  Real Estate is vacant land. The commitment for title insurance furnished by Seller will be presumptive evidence
205  of good and merchantable title as therein shown, subject only to the exceptions therein stated. **If the title**
206  **commitment discloses any unpermitted exceptions or if the Plat of Survey shows any encroachments or other**
207  **survey matters that are not acceptable to Buyer, then Seller shall have said exceptions, survey matters or**
208  **encroachments removed, or have the title insurer commit to either insure against loss or damage that may**
209  **result from such exceptions or survey matters or insure against any court-ordered removal of the**
210  **encroachments. If Seller fails to have such exceptions waived or insured over prior to Closing, Buyer may elect**
211  **to take title as it then is with the right to deduct from the Purchase Price prior encumbrances of a definite or**
212  **ascertainable amount. Seller shall furnish Buyer at Closing an Affidavit of Title covering the date of Closing and**
213  **shall sign any other customary forms required for issuance of an ALTA Insurance Policy.**
             *Buyer may, at Buyer's sole expense, obtain a survey of the* *UB*
214  **19. PLAT OF SURVEY:** ~~Not less than one (1) Business Day prior to Closing, except where the Real Estate is a~~
215  ~~condominium (see Paragraph 15) Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat of~~
          *Property & Seller shall cooperate to provide access.*

Buyer Initial _P.P._ Buyer Initial _____          Seller Initial _UB_ Seller Initial _____
Address: 619 Westwind Dr, Carpentersville, Illinois 60110
Page 5 of 13                                                                          v6.1

DocuSign Envelope ID: 6BFBBD50-70B7-45CC-A77B-05850D58698

DocuSign Envelope ID: 5D419A00-DA85-4B8E-9BB2-8F0E484302A7

*P. Pub*

216  ~~Survey that conforms to the current Minimum Standard of Practice~~ for boundary surveys, ~~is dated not more~~
217  ~~than six (6) months prior to the date of Closing, and~~ is prepared by a ~~professional~~ land surveyor licensed to
218  practice land surveying under the laws of the State of Illinois. The Plat of Survey shall show visible evidence of
219  improvements, rights of way, easements, ~~use~~ and measurements of all parcel lines. The land surveyor shall set
220  monuments or witness corners at all accessible corners of the land. All such corners shall also be visibly staked
221  or flagged. The Plat of Survey shall include the following statement placed near the professional land surveyor's
222  seal and signature: "This professional service conforms to the current Illinois Minimum Standards for a
223  ~~boundary survey." A Mortgage Inspection, as defined, is not a boundary survey and is not acceptable.~~

224  **20. DAMAGE TO REAL ESTATE OR CONDEMNATION PRIOR TO CLOSING:** If prior to delivery of the deed the
225  Real Estate shall be destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by
226  condemnation, then Buyer shall have the option of either terminating this Contract (and receiving a refund of
227  earnest money) or accepting the Real Estate as damaged or destroyed, together with the proceeds of the
228  condemnation award or any insurance payable as a result of the destruction or damage, which gross proceeds
229  Seller agrees to assign to Buyer and deliver to Buyer at Closing. Seller shall not be obligated to repair or replace *CuB*
230  damaged improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois
231  shall be applicable to this Contract, except as modified by this paragraph.  *As is, Where Is*
              *Shall be removed by Buyer.*
232  **21. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in ~~broom-clean~~
233  condition. All refuse and personal property that is not ~~to be conveyed to Buyer shall~~ be removed from the Real
234  Estate ~~at Seller's expense~~ prior to delivery of Possession. Buyer shall have the right to inspect the Real Estate,
235  fixtures and included Personal Property prior to Possession to verify that the Real Estate, improvements and
236  included Personal Property are in substantially the same condition as of the Date of Acceptance, normal wear
237  and tear excepted.

238  **22. REAL ESTATE TAX ESCROW:** In the event the Real Estate is improved, but has not been previously taxed for
239  the entire year as currently improved, the sum of three percent (3%) of the Purchase Price shall be deposited in
240  escrow with the title company with the cost of the escrow to be divided equally by Buyer and Seller and paid at
241  Closing. When the exact amount of the taxes to be prorated under this Contract can be ascertained, the taxes
242  shall be prorated by Seller's attorney at the request of either Party and Seller's share of such tax liability after
243  proration shall be paid to Buyer from the escrow funds and the balance, if any, shall be paid to Seller. If Seller's
244  obligation after such proration exceeds the amount of the escrow funds, Seller agrees to ~~pay~~ such excess
245  promptly upon demand.  *P. PUB*

246  **23. SELLER REPRESENTATIONS:** ~~Seller's representations contained in this paragraph shall survive the Closing.~~
247  ~~Seller represents that with respect to the Real Estate~~ Seller has no knowledge of nor has Seller received any
248  written notice from any association or governmental entity regarding:
249  a)  zoning, building, fire or health code violations that have not been corrected;
250  b)  any pending rezoning;
251  c)  boundary line disputes;
252  d)  any pending condemnation or Eminent Domain proceeding;
253  e)  easements or claims of easements not shown on the public records;
254  f)  any hazardous waste on the Real Estate;
255  g)  any improvements to the Real Estate for which the required initial and final permits were not obtained;
256  h)  any improvements to the Real Estate which are not included in full in the determination of the most recent tax assessment; or
257  i)  any improvements to the Real Estate which are eligible for the home improvement tax exemption.
258  Seller further represents that:

Buyer Initial _P_ Buyer Initial _____                    Seller Initial _Cub_ Seller Initial _____
Address: 619 ~~Westwind Dr., Carpentersville, Illinois 60110~~
Page 6 of 13                                                                                       v6.1

EXHIBIT A

DocuSign Envelope ID: 6BFBBD50-70B7-45CC-A77B-0585007090A
DocuSign Envelope ID: 5D419A00-DA85-4B8E-9BB2-8F0E484302A7

259  [Initials] ___ P  P  WB ___ There [check one] □ is ☒ is not a pending or unconfirmed special assessment
260  affecting the Real Estate by any association or governmental entity payable by Buyer after the date of Closing.
261  ___ P  WB ___ The Real Estate [check one] □ is ☒ is not located within a Special Assessment Area or
262  Special Service Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs.
263  All Seller representations shall be deemed re-made as of Closing. If prior to Closing Seller becomes aware of
264  matters that require modification of the representations previously made in this Paragraph 23, Seller shall
265  promptly notify Buyer. If the matters specified in such Notice are not resolved prior to Closing, Buyer may
266  terminate this Contract by Notice to Seller and this Contract shall be null and void.

267  **24.  BUSINESS DAYS/HOURS:** Business Days are defined as Monday through Friday, excluding Federal
268  holidays. Business Hours are defined as 8:00 A.M. to 6:00 P.M. Chicago time.

269  **25.  FACSIMILE OR DIGITAL SIGNATURES:** Facsimile or digital signatures shall be sufficient for purposes of
270  executing, negotiating, and finalizing this Contract, and delivery thereof by one of the following methods shall
271  be deemed delivery of this Contract containing original signature(s). An acceptable facsimile signature may be
272  produced by scanning an original, hand-signed document and transmitting same by facsimile. An acceptable
273  digital signature may be produced by use of a qualified, established electronic security procedure mutually
274  agreed upon by the Parties. Transmissions of a digitally signed copy hereof shall be by an established, mutually
275  acceptable electronic method, such as creating a PDF ("Portable Document Format") document incorporating
276  the digital signature and sending same by electronic mail.

277  **26.  DIRECTION TO ESCROWEE:** In every instance where this Contract shall be deemed null and void or if this
278  Contract may be terminated by either Party, the following shall be deemed incorporated: "and Earnest Money
279  refunded upon the joint written direction by the Parties to Escrowee or upon an entry of an order by a court of
280  competent jurisdiction."
281  In the event either Party has declared the Contract null and void or the transaction has failed to close as
282  provided for in this Contract and if Escrowee has not received joint written direction by the Parties or such court
283  order, the Escrowee may elect to proceed as follows:
284  a)  Escrowee shall give written Notice to the Parties as provided for in this Contract at least fourteen (14) days
285      prior to the date of intended disbursement of Earnest Money indicating the manner in which Escrowee
286      intends to disburse in the absence of any written objection. If no written objection is received by the date
287      indicated in the Notice then Escrowee shall distribute the Earnest Money as indicated in the written Notice
288      to the Parties. If any Party objects in writing to the intended disbursement of Earnest Money then Earnest
289      Money shall be held until receipt of joint written direction from all Parties or until receipt of an order of a
290      court of competent jurisdiction.
291  b)  Escrowee may file a Suit for Interpleader and deposit any funds held into the Court for distribution after
292      resolution of the dispute between Seller and Buyer by the Court. Escrowee may retain from the funds
293      deposited with the Court the amount necessary to reimburse Escrowee for court costs and reasonable
294      attorney's fees incurred due to the filing of the Interpleader. If the amount held in escrow is inadequate to
295      reimburse Escrowee for the costs and attorney's fees, Buyer and Seller shall jointly and severally indemnify
296      Escrowee for additional costs and fees incurred in filing the Interpleader action.

297  **27.  NOTICE:** Except as provided in Paragraph 32 c) 2) regarding the manner of service for "kick-out" Notices, all
298  Notices shall be in writing and shall be served by one Party or attorney to the other Party or attorney. Notice to
299  any one of the multiple person Party shall be sufficient Notice to all. Notice shall be given in the following manner:
300  a)  By personal delivery; or

Buyer Initial ___ P ___ Buyer Initial _____        Seller Initial ___ WB ___ Seller Initial _____
Address: 619 Westwind Dr., Carpentersville, Illinois 60110
Page 7 of 13                                                                                    v6.1

EXHIBIT A

DocuSign Envelope ID: 6BFBBD50-70B7-45CC-A77B-05857F6F669A

DocuSign Envelope ID: 5D419A00-DA85-4B8E-9BB2-8F0E484302A7

301  b) By mailing to the addresses recited herein by regular mail and by certified mail, return receipt requested. Except
302      as otherwise provided herein, Notice served by certified mail shall be effective on the date of mailing; or
303  c) By facsimile transmission. Notice shall be effective as of date and time of the transmission, provided that the
304      Notice transmitted shall be sent on Business Days during Business Hours. In the event Notice is transmitted
305      during non-business hours, the effective date and time of Notice is the first hour of the next Business Day after
306      transmission; or
307  d) By e-mail transmission if an e-mail address has been furnished by the recipient Party or the recipient Party's
308      attorney to the sending Party or is shown in this Contract. Notice shall be effective as of date and time of e-mail
309      transmission, provided that, in the event e-mail Notice is transmitted during non-business hours, the effective
310      date and time of Notice is the first hour of the next Business Day after transmission. An attorney or Party may
311      opt out of future e-mail Notice by any form of Notice provided by this Contract; or
312  e) By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day
313      following deposit with the overnight delivery company.

314  **28. PERFORMANCE:** Time is of the essence of this Contract. In any action with respect to this Contract, the Parties
315  are free to pursue any legal remedies at law or in equity and ~~the prevailing party in litigation shall be entitled to~~
316  ~~collect reasonable attorney fees and costs from the non-prevailing party as ordered by a court of competent jurisdiction.~~

317  **29. CHOICE OF LAW AND GOOD FAITH:** All terms and provisions of this Contract including but not limited to the
318  Attorney Review and Professional Inspection paragraphs shall be governed by the laws of the State of Illinois and
319  are subject to the covenant of good faith and fair dealing implied in all Illinois contracts.

320  **30. OTHER PROVISIONS:** This Contract is also subject to those OPTIONAL PROVISIONS initialed by ~~the Parties~~
321  and the following additional attachments, if any: _This contract and the proposed sale is subject to_
322  _the approval of the United States Bankruptcy Court and the provisions of the attached_
323                               OPTIONAL PROVISIONS (Applicable ONLY if initialed by all Parties)   _Bankruptcy Rider._

324  *[Initials]* ____ ____ ____ ____  **31. CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously
325  consented to _____ (Licensee) acting as a Dual Agent in providing
326  brokerage services on their behalf and specifically consent to Licensee acting as a Dual Agent with regard to the
327  transaction referred to in this Contract.

328  ____ ____ ____ ____  **32. SALE OF BUYER'S REAL ESTATE:**
329  a) **REPRESENTATIONS ABOUT BUYER'S REAL ESTATE:** Buyer represents to Seller as follows:
330      1) Buyer owns real estate (hereinafter referred to as "Buyer's real estate") with the address of:
331  _____.
332  Address                                          City                    State               Zip
333      2) Buyer *[check one]* ☐ has  ☐ has not entered into a contract to sell Buyer's real estate.
334          If Buyer has entered into a contract to sell Buyer's real estate, that contract:
335          a) *[check one]* ☐ is  ☐ is not subject to a mortgage contingency.
336          b) *[check one]* ☐ is  ☐ is not subject to a real estate sale contingency.
337          c) *[check one]* ☐ is  ☐ is not subject to a real estate closing contingency.
338      3) Buyer *[check one]* ☐ has  ☐ has not listed Buyer's real estate for sale with a licensed real estate broker and
339          in a local multiple listing service.
340      4) If Buyer's real estate is not listed for sale with a licensed real estate broker and in a local multiple listing
341          service, Buyer *[check one]*:

Buyer Initial _____  Buyer Initial _____        Seller Initial _____  Seller Initial _____
Address: 619 Westwind Dr, Carpentersville, Illinois 60110
Page 8 of 13                                                                                            v6.1

EXHIBIT A

DocuSign Envelope ID: 6BFBBD50-70B7-45CC-A77B-0585 0 ...

DocuSign Envelope ID: 5D419A00-DA85-4B8E-9BB2-8F0E484302A7

342        a) ☐ Shall list real estate for sale with a licensed real estate broker who will place it in a local multiple
343           listing service within five (5) Business Days after Date of Acceptance.
344           *[For information only]* Broker: _____
345           Broker's Address: _____ Phone: _____
346        b) ☐ Does not intend to list said real estate for sale.

347   **b) CONTINGENCIES BASED UPON SALE AND/OR CLOSING OF REAL ESTATE:**
348      1) This Contract is contingent upon Buyer having entered into a contract for the sale of Buyer's real estate that
349        is in full force and effect as of _____, 20____. Such contract should provide for a closing
350        date not later than the Closing Date set forth in this Contract. If Notice is served on or before the date set
351        **forth in this subparagraph that Buyer has not procured a contract for the sale of Buyer's real estate, this**
352        **Contract shall be null and void. If Notice that Buyer has not procured a contract for the sale of Buyer's**
353        **real estate is not served on or before the close of business on the date set forth in this subparagraph,**
354        **Buyer shall be deemed to have waived all contingencies contained in this Paragraph 32, and this**
355        **Contract shall remain in full force and effect. (If this paragraph is used, then the following paragraph <u>must</u>**
356        **be completed.)**
357      2) In the event Buyer has entered into a contract for the sale of Buyer's real estate as set forth in Paragraph 32
358        b) 1) and that contract is in full force and effect, or has entered into a contract for the sale of Buyer's real
359        estate prior to the execution of this Contract, this Contract is contingent upon Buyer closing the sale of
360        Buyer's real estate on or before _____, 20____. **If Notice that Buyer has not closed the sale**
361        **of Buyer's real estate is served before the close of business on the next Business Day after the date set**
362        **forth in the preceding sentence, this Contract shall be null and void. If Notice is not served as described**
363        **in the preceding sentence, Buyer shall have deemed to have waived all contingencies contained in this**
364        **Paragraph 32, and this Contract shall remain in full force and effect.**
365      3) If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in
366        Paragraph 32 b) 1) (or after the date of this Contract if no date is set forth in Paragraph 32 b) 1)), Buyer shall,
367        within three (3) Business Days of such termination, notify Seller of said termination. **Unless Buyer, as part**
368        **of said Notice, waives all contingencies in Paragraph 32 and complies with Paragraph 32 d), this Contract**
369        **shall be null and void as of the date of Notice. If Notice as required by this subparagraph is not served**
370        **within the time specified, Buyer shall be in default under the terms of this Contract.**

371   **c) SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE:** During the time of this contingency,
372      Seller has the right to continue to show the Real Estate and offer it for sale subject to the following:
373      1) If Seller accepts another bona fide offer to purchase the Real Estate while contingencies expressed in
374        Paragraph 32 b) are in effect, Seller shall notify Buyer in writing of same. Buyer shall then have _____
375        hours after Seller gives such Notice to waive the contingencies set forth in Paragraph 32 b), subject to
376        Paragraph 32 d).
377      2) Seller's Notice to Buyer (commonly referred to as a 'kick-out' Notice) shall be in writing and shall be served
378        on Buyer, not Buyer's attorney or Buyer's real estate agent. Courtesy copies of such 'kick-out' Notice should
379        be sent to Buyer's attorney and Buyer's real estate agent, if known. Failure to provide such courtesy copies
380        shall not render Notice invalid. Notice to any one of a multiple-person Buyer shall be sufficient Notice to all
381        Buyers. Notice for the purpose of this subparagraph only shall be served upon Buyer in the following manner:
382        a) By personal delivery effective at the time and date of personal delivery; or
383        b) By mailing to the address recited herein for Buyer by regular mail and by certified mail. Notice shall be
384          effective at 10:00 A.M. on the morning of the second day following deposit of Notice in the U.S. Mail; or

Buyer Initial _P._ _B_ Buyer Initial _____     Seller Initial _ub_ Seller Initial _____
Address: 619 Westwind Dr., Carpentersville, Illinois 60110
Page 9 of 13
                                           *v6.1*

EXHIBIT A

DocuSign Envelope ID: 6BFBBD50-70B7-45CC-A77B-0585D67660B8
DocuSign Envelope ID: 5D419A00-DA85-4B8E-9BB2-8F0E484302A7

385      c) By commercial delivery overnight (e.g., FedEx). Notice shall be effective upon delivery or at 4:00 P.M.
386          Chicago time on the next delivery day following deposit with the overnight delivery company,
387          whichever first occurs.

388    3) If Buyer complies with the provisions of Paragraph 32 d) then this Contract shall remain in full force and effect.

389    4) If the contingencies set forth in Paragraph 32 b) are NOT waived in writing, within said time period by
390       Buyer, this Contract shall be null and void.

391    5) Except as provided in Paragraph 32 c) 2) above, all Notices shall be made in the manner provided by
392       Paragraph 27 of this Contract.

393    6) Buyer waives any ethical objection to the delivery of Notice under this paragraph by Seller's attorney or
394       representative.

395  d) **WAIVER OF PARAGRAPH 32 CONTINGENCIES:** Buyer shall be deemed to have waived the contingencies in
396     Paragraph 32 b) when Buyer has delivered written waiver and deposited with the Escrowee additional earnest
397     money in the amount of $ _____ in the form of a cashier's or certified check within the time
398     specified. If Buyer fails to deposit the additional earnest money within the time specified, the waiver shall be
399     deemed ineffective and this Contract shall be null and void.

400  e) **BUYER COOPERATION REQUIRED:** Buyer authorizes Seller or Seller's agent to verify representations contained
401     in Paragraph 32 at any time, and Buyer agrees to cooperate in providing relevant information.

402  \_\_\_ \_\_\_ \_\_\_ \_\_\_ **33. CANCELLATION OF PRIOR REAL ESTATE CONTRACT:** In the event either Party has entered
403  into a prior real estate contract, this Contract shall be subject to written cancellation of the prior contract on or before
404  _____, 20 ____. In the event the prior contract is not cancelled within the time specified, this
405  Contract shall be null and void. Seller's notice to the purchaser under the prior contract should not be served
406  until after Attorney Review and Professional Inspections provisions of this Contract have expired, been
407  satisfied or waived.

408  \_\_\_ \_\_\_ \_\_\_ \_\_\_ **34. HOME WARRANTY:** Seller shall provide at no expense to Buyer a Home Warranty at a cost
409  of $ _____. Evidence of a fully pre-paid policy shall be delivered at Closing.

410  \_\_\_ \_\_\_ \_\_\_ \_\_\_ **35. CREDIT AT CLOSING:** Provided Buyer's lender permits such credit to show on the HUD-1
411  Settlement Statement or Closing Disclosure, and if not, such lesser amount as the lender permits, Seller agrees to
412  credit $ _____ to Buyer at Closing to be applied to prepaid expenses, closing costs or both.

413  \_\_\_ \_\_\_ \_\_\_ \_\_\_ **36. TRANSACTIONS NOT CONTINGENT ON FINANCING: IF EITHER OF THE FOLLOWING**
414  **ALTERNATIVE OPTIONS IS SELECTED, THE PROVISIONS OF THE MORTGAGE CONTINGENCY PARAGRAPH 8**
415  **SHALL NOT APPLY [CHOOSE ONLY ONE]:**

416  a) _P. P. W_ **Transaction With No Mortgage (All Cash):** If this selection is made, Buyer will pay at closing,
417     in the form of "Good Funds" the difference (plus or minus prorations) between the Purchase Price and the
418     amount of the Earnest Money deposited pursuant to Paragraph 4 above. Buyer represents to Seller, as of the
419     Date of Offer, that Buyer has sufficient funds available to satisfy the provisions of this paragraph. Buyer agrees
420     to verify the above representation upon the reasonable request of Seller and to authorize the disclosure of such
421     financial information to Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the
422     availability of sufficient funds to close. Buyer understands and agrees that, so long as Seller has fully complied
423     with Seller's obligations under this Contract, any act or omission outside of the control of Seller, whether
424     intentional or not, that prevents Buyer from satisfying the balance due from Buyer at closing, shall constitute a
425     material breach of this Contract by Buyer. The Parties shall share the title company escrow closing fee equally.
426     Unless otherwise provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or
427     closing of Buyer's existing real estate.

*Buyer Initial* _P. P_ *Buyer Initial* _____         *Seller Initial* _we_ *Seller Initial* _____
*Address:* 619 Westwind Dr., Carpentersville, Illinois 60110
*Page 10 of 13*                                             *v6.1*

EXHIBIT A

DocuSign Envelope ID: 6BFBBD50-70B7-45CC-A77B-0585D79D0598

DocuSign Envelope ID: 5D419A00-DA85-4B8E-9BB2-8F0E484302A7

428  b) ___ ___ ___ ___ Transaction, Mortgage Allowed: If this selection is made, Buyer will pay at closing, in the
429  form of "Good Funds" the difference (plus or minus prorations) between the Purchase Price and the amount of
430  the Earnest Money deposited pursuant to Paragraph 4 above. Buyer represents to Seller, as of the Date of Offer,
431  that Buyer has sufficient funds available to satisfy the provisions of this paragraph. Buyer agrees to verify the
432  above representation upon the reasonable request of Seller and to authorize the disclosure of such financial
433  information to Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the
434  availability of sufficient funds to close. Notwithstanding such representation, Seller agrees to reasonably and
435  promptly cooperate with Buyer so that Buyer may apply for and obtain a mortgage loan or loans including but
436  not limited to providing access to the Real Estate to satisfy Buyer's obligations to pay the balance due (plus or
437  minus prorations) to close this transaction. Such cooperation shall include the performance in a timely manner
438  of all of Seller's pre-closing obligations under this Contract. This Contract shall NOT be contingent upon
439  Buyer obtaining financing. Buyer understands and agrees that, so long as Seller has fully complied with
440  Seller's obligations under this Contract, any act or omission outside of the control of Seller, whether intentional
441  or not, that prevents Buyer from satisfying the balance due from Buyer at Closing shall constitute a material
442  breach of this Contract by Buyer. Buyer shall pay the title company escrow closing fee. Unless otherwise
443  provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or closing of Buyer's
444  existing real estate.

445  ___ ___ ___ ___ 37. VA OR FHA FINANCING: If Buyer is seeking VA or FHA financing, required FHA or VA
446  amendments and disclosures shall be attached to this Contract. If VA, the Funding Fee, or if FHA, the Mortgage
447  Insurance Premium (MIP) shall be paid by Buyer and *[check one]* ☐ shall ☐ shall not be added to the mortgage loan amount.

448  ___ ___ ___ ___ 38. WELL OR SANITARY SYSTEM INSPECTIONS: Seller shall obtain at Seller's expense a well
449  water test stating that the well delivers not less than five (5) gallons of water per minute and including a bacteria
450  and nitrate test and/or a septic report from the applicable County Health Department, a Licensed Environmental
451  Health Practitioner, or a licensed well and septic inspector, each dated not more than ninety (90) days prior to
452  Closing, stating that the well and water supply and the private sanitary system are in operating condition with no
453  defects noted. Seller shall remedy any defect or deficiency disclosed by said report(s) prior to Closing, provided that
454  if the cost of remedying a defect or deficiency and the cost of landscaping together exceed $3,000.00, and if the
455  Parties cannot reach agreement regarding payment of such additional cost, this Contract may be terminated by
456  either Party. Additional testing recommended by the report shall be obtained at the Seller's expense. If the report
457  recommends additional testing after Closing, the Parties shall have the option of establishing an escrow with a
458  mutual cost allocation for necessary repairs or replacements, or either Party may terminate this Contract prior to
459  Closing. Seller shall deliver a copy of such evaluation(s) to Buyer not less than ten (10) Business Days prior to
460  Closing.

461  ___ ___ ___ ___ 39. WOOD DESTROYING INFESTATION: Notwithstanding the provisions of Paragraph 12,
462  within ten (10) Business Days after the Date of Acceptance, Seller at Seller's expense shall deliver to Buyer a written
463  report, dated not more than six (6) months prior to the Date of Closing, by a licensed inspector certified by the
464  appropriate state regulatory authority in the subcategory of termites, stating that there is no visible evidence of
465  active infestation by termites or other wood destroying insects. Unless otherwise agreed between the Parties, if the
466  report discloses evidence of active infestation or structural damage, Buyer has the option within five (5) Business
467  Days of receipt of the report to proceed with the purchase or to declare this Contract null and void.

468  ___ ___ ___ ___ 40. POST CLOSING POSSESSION: Possession shall be delivered no later than 11:59 P.M. on the
469  date that is _____ days after the date of Closing ("the Possession Date"). Seller shall be responsible for all
470  utilities, contents and liability insurance, and home maintenance expenses until delivery of possession. Seller shall

*Buyer Initial* ___ *Buyer Initial* _____          *Seller Initial* ___ *Seller Initial* _____
*Address:* 619 Westwind Dr., Carpentersville, Illinois 60110                                    *v6.1*
*Page 11 of 13*

EXHIBIT A

DocuSign Envelope ID: 6BFBBD50-70B7-45CC-A77B-05850D069D98

DocuSign Envelope ID: 5D419A00-DA85-4B8E-9BB2-8F0E484302A7

471  deposit in escrow at Closing with _____, *[check one]* ☐ one percent (1%)
472  of the Purchase Price or ☐ the sum of $_____ to be paid by Escrowee as follows:

473  a)  The sum of $_____ per day for use and occupancy from and including the day after Closing to
474  and including the day of delivery of Possession, if on or before the Possession Date;

475  b)  The amount per day equal to three (3) times the daily amount set forth herein shall be paid for each day after
476  the Possession Date specified in this paragraph that Seller remains in possession of the Real Estate; and

477  c)  The balance, if any, to Seller after delivery of Possession and provided that the terms of Paragraph 21 have been
478  satisfied. Seller's liability under this paragraph shall not be limited to the amount of the possession escrow
479  deposit referred to above. Nothing herein shall be deemed to create a Landlord/Tenant relationship between the Parties.

480  41. **"AS IS" CONDITION:** This Contract is for the sale and purchase of the Real Estate in its "As
481  Is" condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or guarantees with
482  respect to the condition of the Real Estate have been made by Seller or Seller's Designated Agent other than those
483  known defects, if any, disclosed by Seller. Buyer may conduct an inspection at Buyer's expense. In that event, Seller
484  shall make the Real Estate available to Buyer's inspector at reasonable times. Buyer shall indemnify Seller and hold
485  Seller harmless from and against any loss or damage caused by the acts of negligence of Buyer or any person
486  performing any inspection. **In the event the inspection reveals that the condition of the Real Estate is
487  unacceptable to Buyer and Buyer so notifies Seller within five (5) Business Days after the Date of Acceptance,
488  this Contract shall be null and void.** Buyer's notice SHALL NOT include a copy of the inspection report, and
489  Buyer shall not be obligated to send the inspection report to Seller absent Seller's written request for same.
490  Failure of Buyer to notify Seller or to conduct said inspection operates as a waiver of Buyer's right to terminate
491  this Contract under this paragraph and this Contract shall remain in full force and effect. Buyer acknowledges
492  that the provisions of Paragraph 12 and the warranty provisions of Paragraph 5 do not apply to this Contract.

493  ___ ___ ___ ___ 42. **SPECIFIED PARTY APPROVAL:** This Contract is contingent upon the approval of the Real
494  Estate by _____
495  Buyer's Specified Party, within five (5) Business Days after the Date of Acceptance. In the event Buyer's Specified
496  Party does not approve of the Real Estate and Notice is given to Seller within the time specified, this Contract shall
497  be null and void. If Notice is not served within the time specified, this provision shall be deemed waived by the
498  Parties and this Contract shall remain in full force and effect.

499  ___ ___ ___ ___ 43. **INTEREST BEARING ACCOUNT:** Earnest money (with a completed W-9 and other
500  required forms), shall be held in a federally insured interest bearing account at a financial institution designated
501  by Escrowee. All interest earned on the earnest money shall accrue to the benefit of and be paid to Buyer. **Buyer
502  shall be responsible for any administrative fee (not to exceed $100) charged for setting up the account.** In
503  anticipation of Closing, the Parties direct Escrowee to close the account no sooner than ten (10) Business Days
504  prior to the anticipated Closing date.

505  ___ ___ ___ ___ 44. **MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon the
506  Parties entering into a separate written agreement consistent with the terms and conditions set forth herein, and
507  with such additional terms as either Party may deem necessary, providing for one or more of the following *[check applicable boxes]*:

508  ☐ Articles of Agreement for Deed        ☐ Assumption of Seller's Mortgage        ☐ Commercial/Investment
509     or Purchase Money Mortgage           ☐ Cooperative Apartment                  ☐ New Construction
510  ☐ Short Sale                            ☐ Tax-Deferred Exchange                  ☐ Vacant Land

*Buyer Initial* _____ *Buyer Initial* _____          *Seller Initial* _____ *Seller Initial* _____
Address: 619 Westwind Dr., Carpentersville, Illinois 60110
Page 12 of 13                                                                                        v6.1

EXHIBIT A

THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND DELIVERED TO THE PARTIES OR THEIR AGENTS.

THE PARTIES REPRESENT THAT THE TEXT OF THIS COPYRIGHTED FORM HAS NOT BEEN ALTERED AND IS IDENTICAL TO THE OFFICIAL MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 6.1.

11/20/2015

Date of Offer — *November 23 2015*

DATE OF ACCEPTANCE — *Elizabeth C Berg, as trustee of the Estate of Consuelo & Elias Esquivel, debtors*

Buyer Signature — *Pranav Patel*

Seller Signature

Buyer Signature
Pranav Patel

Seller Signature — *Bankruptcy Trustee for Elizabeth C. Berg, Consuelo & Elias Esquivel*

Print Buyer(s) Name(s) [Required]

Print Seller(s) Name(s) [Required]
*20 N. Clark St. Suite 200*

Address
Morton Grove | IL | 60053

Address
*Chicago | Illinois | 60602*

City | State | Zip

City | State | Zip
*(312) 726-8150 | ecberg@ameritech.net*

Phone | E-mail

Phone | E-mail

**FOR INFORMATION ONLY**

American Realty Network Inc. | 1855 | IL 478.0053306

*Coldwell Banker*

Buyer's Brokerage | MLS # | State License #
800 Lee st, suite 2 | Des plaines | 60016

Seller's Brokerage | MLS # | State License #
*623 Naperville Road | Wheaton | 60187*

Address | City | Zip
Rutul Parekh | 244186 | IL 475.164496

Address | City | Zip
*Marina Treviso | 221526*

Buyer's Designated Agent | MLS # | State License #
847 293 9190

Seller's Designated Agent | MLS # | State License #
*(630) 456-0341*

Phone | Fax
parekhrealty@gmail.com

Phone | Fax
*marina.treviso@cbexchange.com*

E-mail
Johnathan vold | javold@aol.com

E-mail
*Wayne J. Skelton | wskeltonlaw@gmail.com*

Buyer's Attorney | E-mail

Seller's Attorney | E-mail
*1553 Chickamauga Lane Long Grove 60047*

Address | City | State | Zip
847 259 5214

Address | City | State | Zip
*(847) 913-8705*

Phone | Fax
Cash

Phone | Fax

Mortgage Company | Phone

Homeowner's/Condo Association (if any) Phone

Loan Officer | Phone/Fax

Management Co./Other Contact | Phone

Loan Officer E-mail

Management Co./Other Contact E-mail

Illinois Real Estate License Law requires all offers be presented in a timely manner; Buyer requests verification that this offer was presented.

Seller rejection: This offer was presented to Seller on _____, 20__ at __:__ A.M./P.M. and rejected on _____, 20__ at __:__ A.M./P.M. [Seller Initials]

© 2015, Illinois Real Estate Lawyers Association. All rights reserved. Unauthorized duplication or alteration of this form or any portion thereof is prohibited. Official form available at www.irela.org (website of Illinois Real Estate Lawyers Association). Approved by the following organizations, September 2015: Illinois Real Estate Lawyers Association · DuPage County Bar Association · McHenry County Bar Association · Northwest Suburban Bar Association · Will County Bar Association · Belvidere Board of REALTORS® · Chicago Association of REALTORS® · Heartland REALTOR® Organization · Hometown Association of REALTORS® · Illini Valley Association of REALTORS® · Kankakee-Iroquois-Ford County Association of REALTORS® · Mainstreet Organization of REALTORS® · North Shore-Barrington Association of REALTORS® · Oak Park Area Association of REALTORS® · REALTOR® Association of the Fox Valley, Inc. · Three Rivers Association of REALTORS®

Buyer Initial *P.P.* Buyer Initial _____
Address: 619 Westwind Dr. Carpentersville, Illinois 60110

Seller Initial _____ Seller Initial _____

Page 13 of 13

v6.1

EXHIBIT A

### Bankruptcy Rider
### to Real Estate Sales Contract
### Dated November 23, 2015

R-1.    This Rider is attached to and made a part of the printed Sales Contract to which it is attached for the sale of the property located at **619 Westwind Drive, Carpentersville, IL 60110**("Property").    In the event of a conflict or inconsistency between the terms of this Rider and the printed form contract, the terms of this Rider shall control.

R-2.    This contract and the obligations contemplated hereby are and at all times shall be subject to and conditioned upon the prior approval of the United States Bankruptcy Court for the Northern District of Illinois in the case captioned "Consuelo and Elias Esquivel, debtors" as case number 15-30325.    Seller shall promptly file a motion for approval of this contract ("Motion") with the United States Bankruptcy Court within 14 days after the Date of Acceptance.    Seller shall use Seller's best efforts to schedule the court hearing upon the motion as soon as possible thereafter.    In the event Seller is unable to obtain an order approving the Sales Contract, this Sale Contract shall be deemed null and void and the earnest money deposit shall be returned to Buyer.

R-3.    Buyer acknowledges that Seller is required by applicable bankruptcy law to provide notice of the court hearing on the Motion to third parties who will be eligible to submit competitive bids for the Property at the time of the hearing, provided, however that any such competitive bids considered by Trustee must be at least $5,000.00 higher than Buyer's bid and must be accompanied by a $10,000 earnest money deposit.

R-4.    Following entry of the Bankruptcy Court's order approving the Sales Contract and the proposed sale, Seller shall sell the Property to Buyer free and clear of all liens, claims or interests (except for those permitted exceptions set forth in the Contract), with any liens, claims or interests to attach to the proceeds of sale after payment of all closing costs.  Trustee shall convey the Property to Buyer by a recordable Trustee's quit claim deed.

R-5.    The Property is being sold in an "as is, where is" condition.  Seller has not made and expressly states that she is not hereby making any representation or warranty of any kind or nature with respect to the Property or any personal property currently located thereon, all of which is being sold hereunder in an "as is, where is" condition.

R-6.    This Contract is executed by Elizabeth C. Berg, not personally, but solely as bankruptcy trustee of the Estate of Consuelo and Elias Esquivel, debtor(s) in the chapter 7 case pending in the Northern District of Illinois under case number 15-30325, in the exercise of the power and authority conferred upon and vested in her pursuant to the United States Bankruptcy Code, 11 U.S.C. section 101, et seq.  No personal liability shall be asserted or be enforceable against the Trustee individually because or in respect of

EXHIBIT A

DocuSign Envelope ID: 6BFBBD50-70B7-45CC-A77B-0585D090688D

the execution of this Contract, the performance of the obligations hereunder, or the transaction contemplated hereby, all such liability, if any, being expressly waived by Buyer.

Dated: November 23, 2015

Buyer:                                          Seller:

_Prana Patel_

784AE86DC86E4CD...                              Elizabeth C. Berg, Trustee of the Estate of
                                                **Consuelo and Elias Esquivel**, debtor(s)

(Print Name)

EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | Case No. 15-30325 |
| Elias and Consuelo Esquivel, | ) | Hon. Donald R. Cassling |
| | ) | (Kane County) |
| Debtors. | ) | |

**Affidavit**

County of _____  )
State of Illinois        )

     Wayne J. Skelton, being first duly sworn on oath, deposes and states as follows:

     1.     I am duly licensed to practice law in the State of Illinois and am the principal at the Law Offices of Wayne J Skelton ("Skelton Law"). This affidavit is offered in support of the Trustee's Motion 1) to Sell Real Property Free and Clear of Liens under Section 363(f) – 619 Westwind Dr., Carpentersville, IL, 2) to pay Marina Treviso & Coldwell Banker a Real Estate Broker's Commission, 3) to Employ and Pay Wayne J. Skelton as Special Counsel 4) to Pay Customary Costs of Sale Including Delinquent RE Taxes, and 5) Pay Debtors' Homestead Exemptions and Request Shortened Notice ("Motion").   The matters set forth herein are true and correct to the best of my knowledge and belief.

     2.     Neither I nor any member or employee of Skelton Law has any connection with debtors, their creditors, any other party in interest or their respective attorneys or accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

     3.     Neither I nor any member or employee of Skelton Law hold or represent any interest adverse to debtors' estate in connection with this special purposed for which Mason Law is being retained.

     4.     I am a title agent with Attorneys' Title Guarantee Fund and will be performing title agent services on behalf of the title company for the real estate transaction described in the Motion. I will receive payment for those services directly from the title company.

     5.     Skelton Law has not agreed to share any compensation or reimbursement received in this case except amongst the members and associates of the firm. Neither I nor Skelton Law has previously received payment of any compensation for services rendered in connection with this case.

     FURTHER AFFIANT SAYETH NOT.

                         _____

                               Wayne J. Skelton

SUBSCRIBED AND SWORN TO
before me on November _____, 2015

_____
Notary Public

EXHIBIT B

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | Case No. 15-30325 |
| Elias and Consuelo Esquivel, | ) | Hon. Donald R. Cassling |
| | ) | (Kane County) |
| | ) | Hearing Date:  December 11, 2015 |
| Debtors. | ) | Time: 10:30 a.m. |

**Notice of Trustee's Motion 1) to Sell Real Property Free and Clear of Liens under Section 363(f) – 619 Westwind Dr., Carpentersville, Elgin, IL, 2) to pay Marina Treviso & Coldwell Banker a Real Estate Broker's Commission, 3) to Employ and Pay Wayne J. Skelton as Special Counsel, 4) to Pay Customary Costs of Sale Including Delinquent RE Taxes, and 5) Pay Debtors' Homestead Exemptions**

TO:     DEBTORS, ALL CREDITORS AND OTHER PARTIES IN INTEREST

**Notice of Hearing on Motion:**  On Friday, December 11, 2015, at 10:30 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Donald R. Cassling in Courtroom 240 of the Kane County Courthouse, 100 South 3rd Street, Geneva, Illinois, and shall then and there present the **Trustee's Motion 1) to Sell Real Property Free and Clear of Liens under Section 363(f) – 619 Westwind Dr., Carpentersville, Elgin, IL, 2) to pay Marina Treviso & Coldwell Banker a Real Estate Broker's Commission, 3) to Employ and Pay Wayne J. Skelton as Special Counsel, 4) to Pay Customary Costs of Sale Including Delinquent RE Taxes, and 5) Pay Debtors' Homestead Exemptions** ("Motion") in the above referenced case.  A copy of the Motion is available for inspection and copying at the offices of the Clerk of the United States Bankruptcy Court, 219 South Dearborn Street, Chicago, Illinois  60604, or by requesting a copy from Baldi Berg at the address listed below.

**Property to be Sold:** The Motion seeks authorization to sell the Estate's right, title and interest in the real estate located at 619 Westwind Dr., Carpentersville, Elgin, IL (the "Property").  Trustee has received an offer from Pranav Patel to purchase the Property for a purchase price of $75,000.00 ("Offer").  A copy of the Offer is attached to the Motion.  The Property will be sold "as is, where is" and free and clear of all liens, claims and interests, with all such liens, claims and interests, if any, to attach to the proceeds of sale. Trustee believes that the Offer is fair and reasonable and is consistent with the market price for the Property.

**Employ and Pay Special Counsel**
Trustee also seeks authority to employ Wayne J. Skelton ("Skelton") as her attorney for the purpose of preparing necessary closing documents and representing the Trustee at the closing of the proposed sale (collectively, the "Closing Services").  Pursuant to the Motion, Trustee seeks authority to pay Skelton at closing from the proceeds of the sale and without further order of this Court, a fixed fee of $1,000.00 for the Closing Services as full and final compensation for the performance of the Closing Services

**Proposed Payments to be Made at Closing of Sale of Property:**  Trustee also seeks authority to pay or provide a credit at the closing of the sale of the Property the following from the proceeds of the sale:  1) Marina Treviso and Coldwell Banker a real estate broker's commission of $3,750.00 plus an administrative fee of $495.00; 2) delinquent real estate taxes, 3) $15,000.00 to each of the Debtors on account of their validly claimed homestead exemptions and 4) customary closing costs, including title and recording fees.

**Objections to Motion:**  Objections, if any, to the proposed Sale of the Property or the Motion must be filed on or before **December 9, 2015** with the Clerk of the United States Bankruptcy Court, 219 South Dearborn Street, Chicago, IL 60604, with a copy to be served on the Trustee's counsel at the address set forth below.   If no objections are filed or if no party requests a formal hearing on the Motion, the Motion may be granted without further hearing thereon. **Pursuant to Rule 6004(h), Trustee has requested that the fourteen day stay of the proposed sale be waived and that the sale of the Property is authorized to proceed immediately upon approval by the Court.**

November 24, 2015

Elizabeth C. Berg                             /s/ Elizabeth C. Berg, trustee of the estate of Elias Cortez, debtor
Julia D. Loper
Baldi Berg, Ltd.
20 N Clark Street, Suite 200
Chicago, IL 60602        (312) 726-8150

EXHIBIT C